UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:12-cv-12-EBA

ROBERT FOLEY,                                                                                                                                               PLAINTIFF,

V.                        **MEMORANDUM OPINION**
                                **AND ORDER**

LADONNA THOMPSON,
in her Official Capacity as Commissioner
of the Kentucky Department of Corrections,                              DEFENDANT.

I. INTRODUCTION

Plaintiff, Robert Foley, is a death row inmate incarcerated at the Kentucky State Penitentiary in Eddyville, Kentucky. This case involves Plaintiff's claim that the Defendant, LaDonna Thompson, Commissioner of the Kentucky Department of Corrections (DOC), violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that the Defendant has exhibited deliberate indifference to his serious medical needs by failing to secure a hospital to perform hip replacement surgery on him. This matter is before the court on Defendant's Motion for Summary Judgment. [R. 40].[1] Because the Plaintiff has not set forth a genuine issue of material fact on a necessary element of his claim, Defendant's Motion for Summary Judgment is GRANTED.

---

[1] In addition to summary judgment, the Defendant's motion also seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. [R. 40 at 14-15]. However, if, on a motion under Rule 12(c), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because the present motion includes matters outside the pleadings, it will be treated as a summary judgment motion.

## II. FACTUAL BACKGROUND

Plaintiff has been incarcerated on death row since September 29, 1993. [R. 40 at 2 ]. On June 6, 2008, Plaintiff informed DOC medical personnel that he was experiencing pain in his right hip. [R. 40]. Throughout the following months, Plaintiff intermittently complained of pain in his hip. [R. 1 at ¶ 18f]. During this time period, the DOC attempted to treat Plaintiff with pain medication. [R. 1 at ¶ 18f]. On April 13, 2010, as a result of continued complaints by Plaintiff, medical personnel requested a consult with Dr. Phillip Hunt, an orthopedic surgeon. [R. 1 at ¶ 18g]. Dr. Hunt declined the DOC's requested consultation on May 7, 2010. [R. 1 at ¶18m].

After Dr. Hunt decided not to consult on Plaintiff's condition, the DOC sent X-rays and clinical notes to Dr. Joseph Dobner, another orthopedic surgeon, so that he could review Plaintiff's case. [R. 1 at ¶ 18r]. On June 23, 2010, Dr. Dobner informed medical personnel that Plaintiff's best course of treatment would be to use a walker and incorporate Tylenol into his regimen. [R. 1 at ¶ 18s]. Dr. Dobner also advised that hip replacement was "certainly not a necessity." [R. 1 at ¶ 18s].

Two months later, Dr. Dobner treated Plaintiff's right hip with a steroid injection. [R. 1 at 18cc]. However, Plaintiff reported that the injection was ineffective. [R. 1 at ¶ 18dd]. Less than a month later, the DOC attempted to secure a consultation for Plaintiff with another orthopedic surgeon, Dr. Thane Deweese, but Deweese's office informed medical personnel that the doctor "did not want to get involved with this inmate, especially with a hepatitis C diagnosis." [R. 1 at ¶ 18ii].

Sometime around September 2010, the DOC began making a concerted effort to find a hospital willing to perform a hip replacement surgery on Plaintiff. [See R. 1 at ¶ 18 ff]. Shortly thereafter, the DOC was able to locate an orthopedic surgeon, Dr. Donley, willing to perform the surgery at a particular hospital where he had admitting privileges. [R. 1 at ¶ 18jj]. However, Dr.

Donley was forced to withdraw from his commitment when the hospital denied his request to perform the surgery on its premises. [R. 1 at ¶ 18jj].

After it was determined that Dr. Donley would be unable to proceed with Plaintiff's hip replacement surgery, Dr. Dobner agreed to perform the procedure, and the surgery seemed likely to occur in early 2011. [See R. 1 at ¶ 18pp]. However, on February 22, 2011, Frankfort Regional Medical Center refused to allow the surgery to proceed, citing security concerns and the "high profile" nature of the patient. [R. 1 at ¶ 18ss].

On February 9, 2012, Plaintiff filed a complaint in the Franklin Circuit Court requesting a declaratory judgment that the DOC has an obligation to provide medical care to inmates in its custody and an injunction ordering the DOC to provide for his hip replacement surgery. [R. 1]. The Defendant subsequently provided notice of removal from state court to the United States District Court for the Eastern District of Kentucky pursuant to the provisions of 28 U.S.C. § 1441 et seq. [R. 1]. Upon consent of all parties, this case was referred to the undersigned for all proceedings. [R. 14].

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). While the court must view all facts in the light most

favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings, see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 481 F.3d 324, 330 (6th Cir. 2007) (alteration in original) (citing Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993)). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." Pearce v. Faurecia Exhaust Sys., Inc., 529 F. App'x 454, 458 (6th Cir. 2013) (quoting Gooden v. City of Memphis Police Dep't, 67 F. App'x 893, 895 (6th Cir. 2003)). Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 586-87.

## IV. ANALYSIS

Under the Eighth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976). "If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation." Brown v. Plata, 131 S.Ct. 1910, 1928 (2011).

Plaintiff contends that the Defendant acted with deliberate indifference toward his serious medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

4

See id. To prevail on his claim, Plaintiff must show both an objective and subjective component. Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994). First, he must prove that he suffered from a "sufficiently serious" medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, he must show that the Defendant acted with "a sufficiently culpable state of mind"–specifically, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks omitted).

A. Serious Medical Need

As noted above, the objective component of the deliberate indifference standard requires "the existence of a 'sufficiently serious' medical need." Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895 (6th Cir. 2004). When an Eighth Amendment claim is based on an obvious medical need that has been "left completely untreated, 'the delay alone in providing medical care creates a substantial risk of serious harm.'" Cobbs v. Pramstaller, 475 F. App'x 575, 580 (6th Cir. 2012) (citations omitted) (internal quotation marks omitted). By contrast, when an Eighth Amendment claim is "based on a prison's failure to treat a condition *adequately* . . . a plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." Id. (citations omitted) (internal quotation marks omitted); see also Blosser v. Gilbert, 422 F. App'x 453, 460 (6th Cir. 2011).

The DOC began its efforts to find a hospital willing to perform a hip replacement surgery on Plaintiff sometime around September 2010. [See R. 1 at ¶ 18 ff]. Thus, Plaintiff has waited approximately four years for hip replacement surgery. However, Plaintiff has received numerous medications and treatments from medical professionals in the interim. He has been diagnosed with severe degenerative arthritis of the right hip, [R. 1 at ¶ 18e], prescribed pain medication, [R. 1 at ¶ 18f], and provided with the use of assistive devices, such as a walker and a wheelchair,

[R. 1 at ¶ 18m]. Medical professionals have recommended several different treatments for Plaintiff, including a regimen of pain medication, [R. 1 at ¶ 18s], a steroid injection, [R. 1 at ¶ 18cc], and even hip replacement surgery, [R. 1 at ¶ 31]. Considering that Plaintiff does not dispute receiving this treatment, he cannot claim that prison officials left his medical needs completely untreated; rather, Plaintiff argues that the prison failed to treat his condition adequately. Therefore, to prevail on his claim, he must provide verifying medical evidence of the detrimental effect of the delay in his potential hip replacement. See Blackmore, 390 F.3d at 898; Napier v. Madison Cnty., Ky., 238 F.3d 739, 742 (6th Cir. 2001).

To that end, Plaintiff points to several harms that have resulted or may result from a continued delay in his receipt of a hip replacement. For example, Plaintiff has provided medical records indicating that he has fallen several times due to his weakened hip. These records show that Plaintiff first fell on April 30, 2010, hitting his head on a laundry rack. [R.1 at ¶ 18k]. Although he had been provided with a walker, Plaintiff fell again on July 1, 2010. [R.1 at ¶ 18w]. Plaintiff fell yet again on August 18, 2010 and had the breath knocked out of him. [R.1 at ¶ 18bb]. On February 11, 2011, Plaintiff was brought to the infirmary after he fell in his cell. [R.1 at ¶ 18oo]. On this occasion, records indicate that he was knocked unconscious. [Id.] Plaintiff suffered another fall on March 16, 2011. [R. 1 at ¶ 18uu]. In addition to the evidence of falls suffered by Plaintiff, he has put forth medical records showing that he has endured "fairly extensive degenerative change[s] of the right hip" while awaiting surgery. [R. 1 at ¶ 18uu]. Furthermore, evidence in Plaintiff's medical records indicates that he continues to suffer chronic pain while awaiting hip replacement surgery despite being provided with pain medication and a steroid injection. [See R.1 at ¶¶ w, aa, cc].

Viewing the facts in the light most favorable to Plaintiff, this medical evidence creates a

genuine issue of fact as to whether Plaintiff suffers from a serious medical need. See Sarah v. Thompson, 109 F. App'x 770, 771 (6th Cir. 2004) (explaining that the detrimental effect of a delay in medical treatment may be established through evidence that a condition significantly affects an individual's daily activities or leads to chronic and substantial pain). Consequently, summary judgment in favor of the Defendant is not appropriate on this issue.

## B. Deliberate Indifference

Turning to the subjective component of Plaintiff's Eighth Amendment claim, the DOC is entitled to summary judgment if it can show that the Plaintiff has not established a genuine issue of material fact as to whether prison officials acted with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834. Deliberate indifference is shown when a defendant's conduct evidences "deliberateness tantamount to an intent to punish." Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993) (quoting Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988)). Put another way, deliberate indifference may be proven when a defendant's actions amount to an "unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-06. On the other hand, "an inadvertant failure to provide adequate medical care" does not violate the Eighth Amendment. Id. at 105.

Plaintiff contends that the Defendant exhibited deliberate indifference to his serious medical needs by not putting forth a satisfactory effort to secure a doctor and a facility to perform his hip replacement surgery. In support of this argument, Plaintiff presents evidence that the nurse assigned the duty of finding off-site accommodations for Plaintiff's surgery, Nurse Hiland, had no previous experience securing such accommodations for the DOC. [R. 44, App. 4 at 7:57]. Plaintiff also draws the Court's attention to evidence indicating that Nurse Hiland referred to him as a "sociopath" when

7

prompted to describe him during a deposition. [Id. at 19:30-20:32]. Furthermore, Plaintiff puts forth deposition testimony from the University of Louisville's Chief Nursing Officer, Mary Jane Adams, indicating that the DOC used the "sociopath" label in its interactions with the University's medical center. [R. 44, app. 12 at 9:12]. Additionally, Plaintiff presents deposition testimony from Warden Parker that the security measures established for Plaintiff's transportation were "not necessarily" the same as those in place for other death row inmates. [R. 44, App. 2 at 4:27-4:45]. Plaintiff also puts forth an email from Warden Parker indicating that the warden was concerned about security issues and the political implications of the Plaintiff's potential surgery. [R. 1 at ¶ 18ll]. Within the email, Warden Parker stated that he would recommend the "safest and most secure setting [for Plaintiff's hip replacement surgery] . . . regardless of the cost." [R. 1 at ¶ 18ll]. Further, Plaintiff offers his own deposition testimony that he has previously been transported while an inmate on death row without incident. [R. 44, App. 13 at 16:20-17:00]. However, Plaintiff also admits that extensive security, including the use of a Kentucky State Police task force and a detail of four officers, was provided during his prior trips to hospital and to court appearances. [Id. at 17:00-18:15].

The implication underlying Plaintiff's argument and the evidence he has decided to put forth is that the DOC sabotaged its own attempts to locate a hospital willing to perform his desired hip replacement surgery. The Plaintiff attempts to prove this by asserting that the DOC varied its normal inmate procedures and required more security around Plaintiff's transportation than it had in the past. However, the evidence put forth by Plaintiff fails to create a genuine issue of material fact as to whether prison officials acted with the requisite culpable state of mind necessary to establish the subjective component of his Eighth Amendment claim.

In fact, Plaintiff's allegation that Nurse Hiland was unqualified to manage the search for a

8

medical treatment provider does not demonstrate that she, or the prison officials that placed her in charge of off-site treatment, acted with a "deliberateness tantamount to an intent to punish" in failing to secure a hospital to perform surgery on Plaintiff. See Hicks, 992 F.2d at 1455 (quoting Molton, 839 F.2d at 243). Furthermore, Plaintiff's speculation that additional security measures were instituted to dissuade hospitals from performing surgery on him is not enough to withstand the Defendant's motion for summary judgment because Plaintiff has not offered any evidence that the DOC's security measures were tied to subjective intent or wantonness on the part of the DOC to deny Plaintiff treatment. Although Warden Parker's email may tend to show that he considered security concerns as part of the calculus surrounding Plaintiff's potential surgery, Plaintiff has not submitted evidence sufficient for a jury to find that the warden did so with wanton disregard for Plaintiff's serious medical needs.

In contrast to the Plaintiff's failure to submit to evidence sufficient to support its assertions that the DOJ was sabotaging its negotiations with potential surgery sites, the Defendant provides significant, undisputed evidence demonstrating that the DOC was not indifferent toward Plaintiff's condition. More specifically, the Defendant offers evidence that prison officials made efforts to find both a surgeon and a hospital to perform a hip replacement. In fact, Nurse Hiland was able to enlist Dr. Dobner to perform the surgery. [See R. 1 at ¶ 18kk]. Furthermore, the Defendant reached an agreement for the surgery to be performed at Frankfort Regional Medical Center, but the hospital, rather than the Defendant, chose to cancel the operation. [R. 1 at ¶ 18rr]. Even more, after the complaint was filed in this case, the Defendant contacted the University of Kentucky and the University of Louisville medical centers, but both declined to accept Plaintiff for hip replacement surgery. [R. 48 at 3]. At worst, the Defendant's efforts to secure a venue willing to perform surgery

9

on Plaintiff amount to "an inadvertent failure to provide adequate medical care," which is insufficient to establish a violation of the Eighth Amendment. Estelle, 429 U.S. at 105-06.

The parties do not dispute that, throughout the period in question, Plaintiff suffered real pain from his degenerative hip condition. Nevertheless, the record evidence shows that he was routinely seen by doctors for this condition. He was diagnosed with severe degenerative arthritis of the right hip, [R. 1 at ¶ 18e], prescribed medication, [R. 1 at ¶18f], given a steroid injection, [R. 1 at ¶ 18cc], and provided with the use of assistive devices, such as a walker and a wheelchair, [R. 1 at ¶ 18m]. Moreover, the Defendant made reasonable efforts to find a doctor and a medical facility to carry out Plaintiff's hip replacement surgery. Under these circumstances, even when viewed in the light most favorable to Plaintiff, the record will not support a finding of deliberate indifference. See Mitchell v. Hininger, 553 F. App'x 602, 604-05 (6th Cir. 2014) (citing Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011)) (explaining that, where a claimant received treatment, he must show that his treatment was "so woefully inadequate as to amount to no treatment at all"). Accordingly, the Court will grant summary judgment in favor of the Defendant on this issue.[2]

## V. CONCLUSION

IT IS ORDERED that the Defendant's Motion for Summary Judgment [R. 40] is GRANTED.

IT IS FURTHER ORDERED that the matter is DISMISSED from the Court's active docket.

This is a final and appealable order and there is no just cause for delay.

This the 4th day of September, 2014.

---

[2] In her Motion for Summary Judgment, the Defendant also presented an argument that Plaintiff does not qualify for injunctive relief. [R. 40 at 15-17]. Because the Defendant has been granted summary judgment on the Eighth Amendment issue, the Court does not reach her argument regarding injunctive relief.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge